AO 106 (Rev. 04/10) Application for a Search Warrant

**SEALED**

# UNITED STATES DISTRICT COURT
for the
WESTERN District of TEXAS

**FILED**
MAY 28 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. SA-19-MJ-627
8715 Hideout Bend, San Antonio, Texas )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment "A"

located in the ____WESTERN____ District of ____TEXAS____, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT A and ATTACHMENT B, which are attached hereto and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to Possess and Possession With Intent to Distribute Controlled Substances. |

The application is based on these facts:
See AFFIDAVIT, which is attached hereto and incorporated by reference.

☒ Continued on the attached sheet.
☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*
TFO Bryan Smith, DEA
*Printed name and title*

☒ Sworn to before me and signed in my presence.
☐ Sworn to telephonically and signed electronically.

Date: 5/28/2019

City and state: SAN ANTONIO, TEXAS

_____
*Judge's signature*
Richard B. Farrer, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT "A"

**8715 Hideout Bend, San Antonio, Texas;** is a white brick with and beige trim, two story family dwelling, with an attached two (2) car garage with a dark colored front door with a rectangle glass in the center.

## ATTACHMENT "B"

1. Books, records, receipts, notes, ledgers, bank records, money orders, computers and their contents, computer software -both hardware and software, and other papers relating to the purchase, transportation, ordering, sale, importation, manufacture, and distribution of controlled substances and/or records relating to the receipt, transfer, storage, deposit, investment, and disposition of the proceeds from the distribution of illegal controlled substances;

2. Currency, financial instruments, precious metals, jewelry, bank records, titles, deeds, notes and/or papers of financial transactions relating to obtaining, transferring, storing, depositing, investing, laundering, concealing, or expending of money or other items of value made or derived from trafficking in illegal controlled substances, and the contents of safes, vaults, security boxes, locked boxes, and other receptacles containing the same;

3. Telephone, address books, caller ID boxes, digital pagers and their contents, cellular telephones and their contents, and/or papers which reflect names, addresses, and/or telephone numbers of individuals, businesses, and associates in the purchase, transportation, sale, manufacture and distribution of illegal controlled substances and/or individuals and businesses who aid, assist or conceal the disposition of moneys from the trafficking of illegal controlled substances, and telephone records indicating long distance calls;

4. Photographs and video cassette tapes of individuals, property and illegal controlled substances;

5. Illegal controlled substances, including, materials used in packaging, cutting, weighing, and distributing illegal controlled substances in violation of various sections of Title 21, United States Code, including Sections 841(a)(1), 841(b)(1)(A), and 846;

6. Guns including rifles, shotguns, handguns, and ammunition; The items listed in paragraph A above constitute evidence of ongoing and continuing involvement in the distribution and importation of illegal controlled substances in violation of various sections of Title 21, United States Code, including Sections 841(a)(1), 841(b)(1)(A), and

846 and in the laundering of proceeds from the distribution of illegal controlled substances in violation of Title 18, United States Code, Section 1956.

AFFIDAVIT

Your Affiant is Bryan Smith, Task Force Officer, Drug Enforcement Administration, San Antonio, Texas, being duly sworn state:

1. Your Affiant has been employed as a Deputy Sheriff by the Bexar County Sheriff's Office (BCSO) Narcotics Division and is currently assigned as a Deputized Task Force Officer with the United States Drug Enforcement Administration in San Antonio, Texas. Affiant has been employed by BCSO for over sixteen (16) years and over six (6) years of that term has been assigned to the Drug Enforcement Administration out of the San Antonio District Office. During the course of Affiant's employment, he has been involved in drug trafficking and money laundering investigations. Affiant has also received training in the investigation of drug trafficking organizations (DTO) and has been provided with information regarding how drug trafficking organizations conduct their illegal business. Affiant has also had discussions with federal, state, and local law enforcement officers and Special Agents with DEA that have substantial experience in the investigation of drug trafficking organizations. Affiant makes this affidavit in support of an application seeking a court order authorizing case agents with the Bexar County Sheriff's Office and assisting agents of the Drug Enforcement Administration (DEA) to conduct a documentary search warrant for the residence located at **8715 Hideout Bend, San Antonio, Texas**.

2. Based on Affiant's training, experience, and participation in this investigation and other investigations involving controlled substances and from having talked extensively with other experienced DEA Agents and other law enforcement officers involved with narcotics investigations, your Affiant knows the following:

a. that drug traffickers very often purchase and/or title their assets in names other than their own to avoid detection of these assets by government agencies;

b. that even though these assets are in other persons names, the drug traffickers continue to use these assets and exercise dominion and control over them;

c. that drug traffickers very often invest in businesses that deal predominantly in cash and that businesses dealing in cash

are often used to launder monies derived from illegal sources, such as drug trafficking;

d. that large-scale drug manufacturers and distributors must maintain, on hand, large amounts of U.S. currency in order to maintain and finance their on-going drug manufacturing and distribution business;

e. that drug traffickers maintain books, records, receipts, notes, ledgers, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

f. that it is common for large scale distributors to secret contraband, proceeds of drug sales and records of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations which they maintain dominion and control over, to provide ready access to this material and also to conceal these items from law enforcement authorities;

g. that, to accomplish this concealment, drug distributors frequently build "stash" places within their residences or businesses. There are a number of publications available on instructing where and how to build "stash" places. Copies of these types of publications have in the past been found in the residences of drug traffickers;

h. that it is common for persons involved in large scale drug manufacturing and distribution to maintain documents and records pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of narcotics proceeds; large amounts of currency, U.S. and foreign; financial instruments; precious metal; jewelry; and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in narcotics trafficking activities.

i. that drug traffickers maintain these items within their residences, businesses, or locations that they maintain dominion and control over;

j. that large scale drug traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines, cellular telephones, pagers, and

telephone answering machines to generate, transfer, count, record and/or store the information described in items a, c, d, e and g above;

k. that when drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize their profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency;

l. that the sale of Controlled Substances generates large quantities of U.S. currency in small denominations commonly referred to as "street money";

m. that it is common for drug traffickers to physically handle and count the "street money" after receiving it in exchange for the Controlled Substances, thereby leaving a trace residue of Controlled Substances on the "street money".

n. that law enforcement agencies own dogs, which are trained to react to the scent of Controlled Substances and trace residues of Controlled Substances; and that those trained dogs have in the past reacted to narcotics tainted currency negotiated at banks and concealed in the residences of drug traffickers;

o. that it is common for drug dealers to separate their "street money" by denomination and put this currency in rubber banded stacks in varying increments to facilitate quick counting;

p. that the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried, and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

q. that, the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000.00, causes tremendous problems for drug traffickers when they attempt to negotiate their illegitimate profits at a financial institution;

r. that, to evade the filing of a CTR, drug traffickers often "structure" their currency transactions so that no one transaction exceeds $10,000.00, or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency;

s. that traffickers at times become fearful that their extravagant spending habits will bring them under the scrutiny by the Internal Revenue Service of other federal, state, of local agencies. To legitimize their spending, these traffickers file income tax returns reporting income commensurate with the amount of money they have spent during the year that they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses;

t. that drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

u. that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product. That these drug traffickers usually maintain these photographs in their possession;

v. that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, manufacture and distribution of controlled substances;

w. that drug traffickers commonly have in their possession that is on their person, at their residences and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug traffickers property. Such property may include, but is not limited to: narcotics, narcotics paraphernalia, jewelry, books, records, and currency;

x. that drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing narcotics. These paraphernalia include, but are not limited to, scales, plastic bags, cutting agents, packaging materials, and measuring devices.

3. As a result Affiant's personal participation in the matter referred to within this affidavit, based upon reports made to me by officers with the Drug Enforcement Administration and other federal, state and local officers, I am familiar with the investigation into **Frankie MARTINEZ** and do hereby affirm the following facts:

(a) During July 20, 2018 through the present, Affiant, Bryan Smith and other case agents have been conducting an investigation into **Frankie MARTINEZ's** Drug Trafficking Organization (DTO). Case agents had received information from a credible and reliable persons, regarding **MARTINEZ** distributing multi kilograms of **Cocaine** and **Crystal Methamphetamine** in and around the San Antonio, Texas area. Affiant and case agents found the information that was provided by the credible and reliable persons to be true and correct. A review of computer data bases revealed that **MARTINEZ** has a criminal history as follows;

- **MARTINEZ** has been arrested by the San Antonio Police Department for Theft of Firearm, Evading Arrest/Detention, Theft $1,500.00 - $20,000.00 USC, Engaged in Organized Crime, Man/Del CS PG1 4-200 grams, DWI, Poss W/I Del CS 4-200 grams, Agg Assault Deadly Weapon, DWI 2nd, and Assault Bodily Injury-Family.

(b) During the course of the investigation into **MARTINEZ's** (DTO), Affiant and case agents were able to locate and identify **8715 Hideout Bend, San Antonio, Texas** to be **MARTINEZ's** residence. Case agents have observed **MARTINEZ** at the location on numerous occasions during the course of this investigation.

(c) Texas Workforce shows the following reported income for **Frankie MARTINEZ**:

- **Frankie MARTINEZ** shows no reported income through Texas Workforce Commission.

- Case agents believe that the Texas Workforce Commission records alone would indicate that **Frankie MARTINEZ** is living beyond his means regarding his assets; his residence, his vehicles, his businesses, etc.

(d) A search through the Bexar County Apprasil District shows that the residence that **MARTINEZ** is currently living in, **8715**

5

**Hideout Bend, San Antonio, Texas** is valued at **$316,310.00 USC (2019)**.

During the course of this investigation, case agents have observed physically or via social media accounts, **MARTINEZ** driving high-end vehicles, **MARTINEZ** is in possession of bulk US Currency, and **MARTINEZ** owning or investing large amounts of US Currency into serval companies that are run by **MARTINEZ**. This type of life style that **MARTINEZ** is living contradicts his personal income with the Texas Workforce Commission.

(e) Affiant, TFO Bryan Smith, swears to the following facts related to the investigation into **Frankie MARTINEZ**;

During the course of this investigation, members of DEA Task Force Group D54, Texas Department of Public Safety (DPS), and the San Antonio Police HIDTA (SAPD) worked in conjunction utilizing confidential sources and sources of information.

On **October 2, 2018**, DEA Task Force Group D54 and the San Antonio Police Department (SAPD) assisted the Texas Department of Public Safety (DPS) in conducting surveillance of a meeting between two (2) confidential sources, herein will be referred to as CS's, **Frankie MARTINEZ**, aka "Toy", and Robert Tyrone **WILLIAMS**.

On this same date, **MARTINEZ** contacted the CS's while utilizing cellular phone number 210-317-2852. **MARTINEZ** asked the CS's to meet with **MARTINEZ** at the Twin Peaks restaurant located at 702 NW Loop 410 in San Antonio, Texas 78216 to discuss payment of $2,500.00 USC for a previous drug debt that one of the CS's owed to **MARTINEZ**. Prior to the meeting with MARTINEZ, DPS Special Agent Cody Wallace provided the CS's with $2,500.00 USC (Official Advanced Funds) along with video and audio recording equipment to record the meeting with Martinez.

At approximately 5:00 p.m., surveillance was established at the Twin Peaks restaurant. Surveillance units observed **MARTINEZ** sitting inside a black Mercedes sedan outside the restaurant waiting for the CS's to arrive.

During the recorded meeting, **MARTINEZ** stated to the CS's that **MARTINEZ** was sending kilogram shipments of **Cocaine** to San Antonio, TX, Chicago, IL, and New York, NY for sale and distribution. Also during the meeting, **MARTINEZ** agreed to sell

to the CS's four and a half (4 ½) ounces of cocaine for $4,000.00 USC later that same night.

On the same night, **MARTINEZ** contacted one of the CS's via cellphone number 210-317-2852 and requested the CS's to meet at the Main Event located at 8514 TX-151 in San Antonio, Texas, 78245. Surveillance units consisting of DEA, DPS, and SAPD were set up in the area of the Main Event parking lot. Prior to the meeting, the CS's were given $4,000.00 USC (OAF) and recording equipment to record the drug transaction with **MARTINEZ**.
At approximately 9:19PM, **MARTINEZ** arrived to the meet location driving the same Mercedes sedan. Several minutes later, the CS's arrived to the meet location. As the CS's were exiting their vehicle, surveillance units observed a white Chevrolet Suburban bearing Texas tag #JPC6175, registered to Robert Tyrone Williams, arrive and park in the area of **MARTINEZ**. Case agents had previously identified the driver of the white Suburban as ***Robert Tyrone WILLIAMS***. **MARTINEZ**, **WILLIAMS**, and the CS's met in the parking lot and then were observed walking together inside the Main Event.

At approximately 9:48PM, **MARTINEZ**, **WILLIAMS**, and the CS's were observed exiting the Main Event. One of the CS's entered the front passenger seat of **WILLIAMS** Suburban as **WILLIAMS** entered the driver seat. **MARTINEZ** was at the driver side door next to **WILLIAMS** as **WILLIAMS** and the CS discussed making and shipping kilograms of cocaine to Chicago, IL and San Antonio, TX. All of these conversations between **MARTINEZ**, **WILLIAMS**, and the CS were recorded.

While inside the Suburban, **WILLIAMS** sold the CS four and a half (4 ½) ounces of **Cocaine** for $4,000.00 USC.

**MARTINEZ** also provided the CS with cellular telephone number (210)238-9362. **MARTINEZ** told the CS to call **MARTINEZ** if there was ever a problem regarding the narcotics.

On January 15, 2019, a confidential source, herein will referred to as CS, called **MARTINEZ**, who was utilizing cellular phone number 210-317-2852. During the phone conversation the CS asked to meet with **MARTINEZ** to make a payment to a previous drug transaction debt. **MARTINEZ** agreed to meet the CS at the Bill Millers located 7140 NW Loop 410 in San Antonio, Texas.

Prior to the meeting, DPS SA Cody Wallace, TFO Bryan Smith, and SAPD Officer Nick Stromboe met with the CS at an undisclosed location. During the meeting, the CS and the CS's vehicle were

searched for contraband which yielded negative results. The CS was given one thousand dollars ($1,000.00) of DPS imprest funds to make the payment to **MARTINEZ** for the previous drug debt.

Surveillance units consisting of DEA Task Force Group D54, DPS, SAPD, and BCSO were set up in the area of the meet location. **MARTINEZ** was observed by surveillance units sitting alone in a black Cadillac sedan bearing Texas license plate LGZ1234 registered to Victoria Stephanie Morin at 7258 Brandyridge, San Antonio, Texas, parked in the parking lot of the meet location.

At approximately 4:21PM, the CS entered the meet location parking lot and parked next to **MARTINEZ's** vehicle. The CS exited their vehicle and entered the front passenger side of **MARTINEZ's** vehicle. A short time later, the CS exited **MARTINEZ's** vehicle and returned to the CS's vehicle. DPS SA Wallace and SA David Galvan followed the CS to an undisclosed location.

The CS advised DPS SA Wallace that the CS paid **MARTINEZ** the one thousand ($1,000.00) for the previous drug debt. The CS also stated that while the CS was inside **MARTINEZ's** vehicle, **MARTINEZ** coordinated with **MARTINEZ's** cousin, *Adam MCGARITY*, for *MCGARITY* to sell the CS some crystal methamphetamine.

The CS stated that **MARTINEZ** was on **MARTINEZ's** cell phone face timing *MCGARITY* as the CS was sitting in **MARTINEZ's** vehicle. After **MARTINEZ** negotiated with *MCGARITY* to sell the CS crystal methamphetamine, **MARTINEZ** text the CS and provided the CS with *MCGARITY's* cellphone number, 210-780-0700.

The CS then text *MCGARITY*, on the cellphone number that **MARTINEZ** provided, and *MCGARITY* responded "what's good bro". The CS asked *MCGARITY* if *MCGARITY* was available to meet up and *MCGARITY* didn't respond.

At approximately 5:06PM, the CS received a text message from cellphone number 210-381-8621 and the message said "this toy cuz bro". The CS then responded by text message then called *MCGARITY* on cellphone number 210-381-8621. During the recorded phone conversation, *MCGARITY* agreed to sell the CS one (1) pound of crystal methamphetamine for $3,250.00 USC. The CS and *MCGARITY* agreed to meet with within an hour or two to conduct the drug transaction

At approximately 7:28PM, the CS was directed to place a recorded phone call to *MCGARITY*. During the recorded phone call, *MCGARITY* directed the CS to meet *MCGARITY* at 500 Tomar Drive in San

Antonio, Texas. After the phone call, DPS SA Wallace and SA David Galvan conducted another search of the CS and the CS's vehicle which yielded negative results. The CS was again equipped with video/audio recording equipment to record the drug transaction with **MCGARITY**. The CS was also provided with $3,000.00 USC (Official Advanced Funds) and $250.00 USC from DPS impress funds.

The CS was then followed to the area of 500 Tomar Drive in San Antonio, Texas. Ground surveillance and aerial surveillance (DPS) was previously established within the meet location area.

At approximately 8:07PM, an unknown vehicle parked behind the CS's vehicle. Surveillance observed **MCGARITY** exit the front passenger side of the unknown vehicle. **MCGARITY** walked to the CS's vehicle and entered through the front passenger side.

Moments later surveillance units observed **MCGARITY** exit the CS's vehicle and walk back to the unknown vehicle. **MCGARITY** reentered the front passenger seat and the vehicle departed the area. Surveillance units stayed following **MCGARITY** and DPS SA Wallace directed the CS to meet at an undisclosed location.

During the meeting, DPS SA Wallace and SA Galvan took custody of the recording equipment and a bundle of crystal methamphetamine from the CS. The CS and the CS's vehicle were again search for contraband which yielded negative results. At the time the CS was released.

DPS SA Wallace and SA Galvan conducted a field test of the suspected crystal methamphetamine which showed a positive reaction for methamphetamine. DPS SA Wallace and SA Galvan transported the one (1) bundle of crystal methamphetamine to the DEA SADO where it was entered into the Drug evidence vault for safe keeping. The one (1) bundle of crystal methamphetamine was labeled Exhibit 4 and had a total approximate weight of 638.5 grams.

Also during the course of this investigation, a Title III wiretap was conducted on the cellular phone number 210-317-2852 which was utilized by **MARTINEZ**. During the intercepted phone calls, **MARTINEZ** discusses several businesses **MARTINEZ** owns or invested large amounts of US Currency (believed to be drug proceeds) and that **MARTINEZ** does not put assets/businesses under **MARTINEZ's** own name. This is a common tactic utilized by drug traffickers to deter law enforcement from seizing any personal property of the drug trafficker.

9

During an intercepted phone call, **MARTINEZ** stated that **MARTINEZ** invested between $30,000.00 USC to $40,000.00 USC into a black Chevrolet Silverado bearing a Texas temporary license plate 36986H3 which **MARTINEZ** is currently driving and storing at **8715 Hideout Bend, San Antonio, Texas**.

**MARTINEZ's** also through intercepted phone calls that **MARTINEZ** has his own clothing line named "Money 2 Dirty", **MARTINEZ** owns his own Vodka Company named "Mene Vodka", **MARTINEZ** owns his own tax servicing company, and **MARTINEZ** owns a rap studio located at 5025 Timber Hill Drive Suite #101, San Antonio, Texas named "The Studio". **MARTINEZ** claims over intercepted phone calls and via **MARTINEZ's** numerous social media accounts/posts that **MARTINEZ** is the owner of the described business and/or **MARTINEZ** has invested large amounts of US Currency into each business.

Due to Affiant's training and experience, it is common practice for drug traffickers to launder their drug proceeds in start-up companies or smaller businesses.

Based on all the foregoing facts and my training and experience as a Bexar County Narcotics Deputy and as a Task Force Officer with the Drug Enforcement Administration, there is probable cause to believe and I do believe that **Frankie MARTINEZ**, and others, are concealing records and other documents relating to their receipt, disposition and funds derived from or relating to the ongoing and continuing acquisition, sale and distribution of **Cocaine** and large amounts of drug proceeds at **8715 Hideout Bend, San Antonio, Texas**.

I therefore respectfully request that search warrants be issued to search the following property and to seize the property which

constitutes evidence, fruits and instrumentalities of violations of Federal criminal law.

_____
Bryan Smith, TFO
Drug Enforcement Administration


Sworn to and subscribed to me this _28th_ day of May, 2019.

_____
Richard B. Farrer
United States Magistrate Judge

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

**SEALED**

for the

Western District of Texas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. SA-19-MJ-627
8715 Hideout Bend, San Antonio, Texas )
)
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Western_____ District of _____Texas_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____June 11, 2019_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Richard B. Farrer, U.S. Magistrate Judge_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: 5/28/2019 3:05 pm    _____
                                                *Judge's signature*

City and state:   SAN ANTONIO, TEXAS        Richard B. Farrer, U.S. Magistrate Judge
                                                *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: SA-19-MJ-627 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title

ATTACHMENT "A"

**8715 Hideout Bend, San Antonio, Texas;** is a white brick with and beige trim, two story family dwelling, with an attached two (2) car garage with a dark colored front door with a rectangle glass in the center.

**ATTACHMENT "B"**

1. Books, records, receipts, notes, ledgers, bank records, money orders, computers and their contents, computer software -both hardware and software, and other papers relating to the purchase, transportation, ordering, sale, importation, manufacture, and distribution of controlled substances and/or records relating to the receipt, transfer, storage, deposit, investment, and disposition of the proceeds from the distribution of illegal controlled substances;

2. Currency, financial instruments, precious metals, jewelry, bank records, titles, deeds, notes and/or papers of financial transactions relating to obtaining, transferring, storing, depositing, investing, laundering, concealing, or expending of money or other items of value made or derived from trafficking in illegal controlled substances, and the contents of safes, vaults, security boxes, locked boxes, and other receptacles containing the same;

3. Telephone, address books, caller ID boxes, digital pagers and their contents, cellular telephones and their contents, and/or papers which reflect names, addresses, and/or telephone numbers of individuals, businesses, and associates in the purchase, transportation, sale, manufacture and distribution of illegal controlled substances and/or individuals and businesses who aid, assist or conceal the disposition of moneys from the trafficking of illegal controlled substances, and telephone records indicating long distance calls;

4. Photographs and video cassette tapes of individuals, property and illegal controlled substances;

5. Illegal controlled substances, including, materials used in packaging, cutting, weighing, and distributing illegal controlled substances in violation of various sections of Title 21, United States Code, including Sections 841(a)(1), 841(b)(1)(A), and 846;

6. Guns including rifles, shotguns, handguns, and ammunition; The items listed in paragraph A above constitute evidence of ongoing and continuing involvement in the distribution and importation of illegal controlled substances in violation of various sections of Title 21, United States Code, including Sections 841(a)(1), 841(b)(1)(A), and

1

846 and in the laundering of proceeds from the distribution of illegal controlled substances in violation of Title 18, United States Code, Section 1956.